# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

DONALD KEITH WHITLOCK,      )
                                       )
        Plaintiff,             )
                                       )
        v.                    )
                                       )     Case No.  10-cv-1006
                                       )
COMMISSIONER OF SOCIAL      )
SECURITY,                       )
                                       )
        Defendant.         )
                                       )
                                       )

# O R D E R  &  O P I N I O N

This matter is before the Court on *pro se* Plaintiff's Motion for Summary Judgment (Doc. 22), Defendant's Motion for Summary Affirmance (Doc. 25) and Memorandum in Support (Doc. 26), and Plaintiff's Motion for Affirmance of Movant's Reply ("Plaintiff's Response") (Doc. 28).[1]  For the following reasons, Defendant's Motion for Summary Affirmance is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

### PROCEDURAL HISTORY

Plaintiff Donald Whitlock applied for disability insurance benefits and supplemental security income under the Social Security Act ("the Act"), alleging that he became disabled on June 15, 2006 as a result of arterial vascular

---

[1] Plaintiff's Motion for Affirmance of Movant's Reply (Doc. 28) is properly characterized as a Response to Defendant's Motion for Summary Affirmance, rather than as a motion.  However to the extent Plaintiff's motion is for the Court to consider the arguments he makes therein, it is GRANTED.  The Court will consider the arguments in this brief.

malformation and the removal of a kidney. (Tr. at 115-125; 148). Plaintiff's claim was denied at the initial and reconsideration levels, prompting him to request a hearing before an Administrative Law Judge ("ALJ"). (Doc. 26 at 1). This hearing took place on March 18, 2009. (Tr. at 20). Plaintiff, who was represented by an attorney, appeared and testified at this hearing, as did a Vocational Expert, Dennis Gustafson. (Tr. at 20-65).

Following the hearing, the ALJ rendered a decision denying Plaintiff's application. (Tr. at 11-19). The ALJ found that Plaintiff's impairments do not prevent him from substantial gainful activity, and that he is not disabled as defined in the Act because he remains capable of performing his past relevant work. (Tr. at 11-19). Following the ALJ's decision, Plaintiff filed a request for review with the Appeals Council, however the Council denied review on November 10, 2009, making the ALJ's determination the final decision of the Commissioner of Social Security. (Tr. at 1-3). On January 5, 2010, Plaintiff filed the instant action in this Court (Doc. 1) seeking review of the Commissioner's decision pursuant to 42 U.S.C. § 405 (g). On November 1, 2010, Plaintiff filed his Motion for Summary Judgment (Doc. 22) and on January 18, 2011, Defendant filed its Motion for Summary Affirmance and Memorandum in Support (Docs. 25 & 26). On February 10, 2011, Plaintiff filed his Response to Defendant's Motion for Summary Affirmance (Doc. 28).

In his Motion for Summary Judgment and Response, Plaintiff appears to argue that the ALJ erred in 1) limiting his discussion to only the evidence supporting his ultimate conclusion and not considering evidence from the Idaho Department of Rehabilitation; 2) viewing the Vocational Expert's opinion prior to

the March 18, 2009 hearing; 3) editing the audio hearing to comport with his decision. (Docs. 25 & 28).[2]

## RELEVANT MEDICAL HISTORY

Medical records indicate that Plaintiff has suffered from congenital arterial vascular malformation affecting his trunk and extremities, particularly his right leg, for his entire life. The condition causes recurrent bleeding, ulcerations, and thrombophlemitis. He was hospitalized for the condition in August 1969, December 1971, December 1973, July 1981, and May 2004. (Tr. at 300-318).

On June 15, 2006, Plaintiff went to the emergency room complaining of sharp pain to his right flank and rectal bleeding. (Tr. at 258). At the time, he was given a CT scan, which showed an abnormal appearance in his left kidney. (Tr. at 261-62). A follow-up CT scan showed that the abnormal mass was consistent with renal cell carcinoma. (Tr. at 269). On June 29, 2006, Plaintiff underwent a radical nephrectomy of his left kidney. (Tr. at 219-220). The operating surgeon, Dr. Douglas P. Norman, wrote that Plaintiff tolerated the procedure well and noted that there were no complications. (Tr. at 220). On July 12, 2006, Dr. Norman wrote that Plaintiff was "doing well" and had no further prescription at the time. (Tr. at 369).

---

[2] Local Rule 8.1(D) requires Plaintiff's Motion for Summary Judgment to "state with particularity which findings of the Commissioner are contrary to law." Further, the Plaintiff is to "identify the statute, regulation or case law under which the Commissioner allegedly erred" and "cite to the record by page number the factual evidence which supports plaintiff's position." While *pro se* plaintiffs are entitled to more lenient standards and the liberal construction of their pleadings, they must still comply with procedural rules. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). When a *pro se* litigant fails to comply, the Court "cannot fill the void by crafting arguments and performing the necessary legal research" as this would not promote the Court's interest in the uniform administration of justice. *Id.* Thus, this Court will not create arguments for Plaintiff, but will do its best to construe the arguments that Plaintiff appears to have made.

On August 7, 2006, Dr. Martin Faber examined Plaintiff to provide a physical assessment for his application for disability benefits. (Tr. at 376). Dr. Faber noted that Plaintiff's chief complaints were 1) bleeding in his right arm, leg, and back, due to congenital arterial vascular malformation, 2) his recent radical nepherectomy, and 3) depression and alcoholism, which he claimed to be in remission.[3] (Tr. at 376). Dr. Faber noted no functional restrictions, and largely noted Plaintiff's normal objective findings. (Tr. at 363-366). Dr. Faber did note Plaintiff's left radical nephrectomy, providing a prognosis of "guarded" and stating that there was no metastasis after the removal of the cancerous tissue – that is, the disease was not spreading. (Tr. at 366).

In September 2006, state agency physician Dr. Richard Bilinsky reviewed Plaintiff's medical record. He opined that Plaintiff could occasionally lift 50 pounds, could frequently lift 25 pounds, could sit, stand, or walk about 6 hours in an 8 hour day, and could perform unlimited pushing/pulling. (Tr. at 387). He noted no other restrictions, and commented that there was no evidence of malignancy after Plaintiff's kidney was removed, there were no complications from his treatment, and that he was healing well. (Tr. at 393). Dr. Sandra Bilinsky reviewed and affirmed these findings in November 2006. (Tr. at 395).

On February 6, 2007, Dr. Faber submitted a letter in support of Plaintiff's application for disability benefits. (Tr. at 398). Dr. Faber stated that he had discontinued treating Plaintiff following his surgery due to lack of funds, but went on to note that he was providing Plaintiff with *pro bono* medical care. (Tr. at 398).

---

[3] In August 2005, Plaintiff was brought to the hospital by a co-worker after he had taken an overdose of Trazadone, and anti-depressant. (Tr. at 235-38).

Dr. Faber further opined that Plaintiff was unable to obtain gainful employment because of limitations from a congenital venous malformation in his right leg. (Tr. at 398). According to Dr. Faber, this condition precluded Plaintiff from sitting for any extended period of time without leg elevation due to pressure which caused pain in his leg. (Tr. at 398). Dr. Faber further noted that Plaintiff had previous hospitalizations due to ruptured veins in his leg ulcerations, and that he had recurrent phlebitis and blood clots in his right leg, as well as restless leg syndrome. (Tr. at 399). Dr. Faber concluded that "The patient has known only factory work. It is my opinion and the opinion of other physicians he has consulted that he would be unable to sustain the rigors and duration of an eight hour work day in any kind of factory setting," and therefore it was his opinion that Plaintiff would be "unable to obtain gainful employment." (Tr. at 399).

On February 29, 2009, Plaintiff's urologist, who had been treating Plaintiff for symptomatic left hydrocele—that is, an accumulation of fluids along the spermatic cord—wrote a letter stating that Plaintiff had multiple arterial venous malformations on his left side during the course of their relationship. (Tr. at 403). Dr. Levisay concluded that "While I am a urologist and cannot speak directly to his disability with regard to the AV malformation, in observing the patient and on physical examination I think it is unlikely that he can perform any kind of manual labor." (Tr. at 403).

## PAST RELEVANT WORK

Along with his application for disability benefits, Plaintiff submitted a "Work History Report." (Tr. at 171). This report indicates that Plaintiff worked as a

factory laborer from 1981 until 2000, a telemarketer from December 2000 until March 2001, a food delivery driver from June 2002 until November 2002, a casino porter from January 2003 until May 2003, again as a telemarketer from December 2003 until January 2004, a delivery driver from June 2004 until July 2004, a construction laborer from October 2004 until October 2005, and once again as a telemarketer from January 2006 until March 2006. (Tr. at 171). In his telemarketing positions with various companies, Plaintiff indicated that he only had to walk 30 minutes a day, did not need to use machines, tools, or equipment other than a telephone, and did not have to lift or carry any objects. (Tr. at 173).

### HEARING TESTIMONY

A hearing on Plaintiff's application for disability benefits was held before ALJ David Thompson on March 18, 2009. (Tr. at 21). Plaintiff, accompanied by an attorney, was present and testified at the hearing, as did Dennis Gustafson, a Vocational Expert. (Tr. at 22). At the hearing, Plaintiff testified that he had not been working since 2006, when he was diagnosed with cancer. (Tr. at 29). The ALJ questioned Plaintiff as to what tasks he could and could not perform, and Plaintiff testified that he could take care of his own personal hygiene, do dishes, laundry, cleaning, shopping, etc. (Tr. at 41). Plaintiff also testified that he could only lift up to five or seven pounds, had trouble with stairs, could only sit for an hour or two, had trouble sitting, standing, walking  bending, kneeling, and stooping, and could only do "short things for small period of times [sic]" because of chronic back problems and his arterial venous malformation. (Tr. at 31-36).

Plaintiff's attorney also questioned Plaintiff at the hearing. During attorney questioning, Plaintiff testified that he could only walk about a block before laying down due to pain and swelling in his leg. (Tr. at 42). Plaintiff also stated that he could experience toxic build up in his leg while sitting, and therefore he would have to get up and walk around to relieve the pressure and then lay down to "get the blood flowing again." (Tr. at 44-45). He stated that he could sit for about 30 minutes to an hour before his leg would start to hurt. (Tr. at 56). He testified that if he did not do these things, his leg would swell and cause an ulcer. (Tr. at 47).

Plaintiff's attorney also asked Plaintiff about his relationship with Dr. Faber. (Tr. at 59). Plaintiff stated that he had seen Dr. Faber approximately five to six times in the past year for various medical conditions, and that while at first Dr. Faber saw him for free, he was now on public aid. (Tr. at 59).

Following questioning by his attorney, the ALJ asked Plaintiff what happened in 2006 that made his condition worse, such that he could work with the arterial venous malformation prior to that time, but was now claiming a disability. (Tr. at 60). Plaintiff responded that he filed for disability at that time because of his kidney cancer, but that prior to that time he had already been struggling to keep a job. (Tr. at 60-61)

Upon completion of Plaintiff's testimony, the Vocational Expert ("VE") was examined. (Tr. at 62). The VE stated that he had not previously discussed the merits of the case with the ALJ, the Plaintiff, or the Plaintiff's attorney. (Tr. at 62-63). He also stated that he had heard the testimony that day, and that based on the testimony he did not have any questions he would like the ALJ to ask Plaintiff, nor

did he wish to make any revisions to the report he had previously submitted. (Tr. at 63). The ALJ asked the VE whether an individual with the same age, education, and experience as Plaintiff, who was limited to medium work and limited postural activities would be able to engage in Plaintiff's past relevant work. (Tr. at 63). The VE stated that it would not affect his position as a telephone solicitor, tractor truck driver, dump truck driver, or assembly worker. (Tr. at 64). The ALJ also asked whether this would change if the individual were limited to light work, only occasional postural activities, and no ropes, ladders, or scaffolds. (Tr. at 64). The VE stated that assembly work and work as a telephone solicitor would be consistent with such restrictions. (Tr. at 64). Finally, the ALJ asked whether the individual was limited to only sedentary work with a sit-stand option, to which the VE responded that work as a telephone solicitor would be the only option. (Tr. at 64).

The Plaintiff's attorney then asked the VE whether an individual of Plaintiff's age and physical condition, who had to lay down and elevate his leg for an indeterminate amount of time during the workday would have the ability to work. (Tr. at 65). The VE responded that there would be no employment opportunities with such restrictions. (Tr. at 65).

## ALJ DECISION

ALJ Thompson issued his decision on July 15, 2009, denying Plaintiff's claim for benefits. (Tr. at 12). In doing so, he utilized the five-step sequential evaluation process common to Social Security benefits determinations. 20 C.F.R. 404.1520(a). The steps are: (1) whether Plaintiff is engaged in substantial gainful activity, 20 C.F.R. 404.1520(b); (2) whether Plaintiff has a medically determinable impairment

that is "severe" or a combination of impairments that are "severe," 20 C.F.R. 404.1520(c); (3) whether Plaintiff's impairments or combination of impairments meets or medically equals the criteria of an impairment, 20 C.F.R. 404.1520(d); (4) whether Plaintiff has the Residual Functional Capacity (RFC) to perform the requirements of his past relevant work, 20 C.F.R. 404.1520(f); and (5) whether Plaintiff is able to do any other work considering his: RFC, age, education, and work experience, 20 C.F.R. 404.1520(g). If it is determined that Plaintiff is or is not disabled at any step of the evaluation process, the evaluation does not go on to the next step. (Doc. 4 at 12).

The ALJ first determined that Plaintiff met the insured status requirements for disability insurance benefits on his alleged onset date of June 15, 2006, and that he had not engaged in any substantially gainful activity since that date. (Tr. at 17). The ALJ next found that Plaintiff suffered from one severe impairment: arterial vascular malformation. (Tr. at 17-18). He did not believe Plaintiff's kidney cancer to be a severe impairment because there was no evidence of metastasis or recurrence since his radical nephrectomy in June 2006, nor had there been any residual problems related to such impairment. (Tr. at 18).

However, the ALJ found that Plaintiff's arterial venous malformation did not meet or medically equal any of the listed impairments because the ulcerations and bleeding requiring hospitalization had not occurred since May 2004, and there was no evidence of any problems due to this impairment since his alleged onset date. (Tr. at 18). Because Plaintiff's impairment did not meet a listing, the ALJ went on to consider whether Plaintiff's RFC allowed him to perform the requirements of his

past relevant work.  (Tr. at 18).  To do this, the ALJ considered 1) whether Plaintiff's underlying physical impairment could reasonably be expected to produce Plaintiff's pain or other symptoms, and 2) the extent to which the intensity, persistence, and limiting effects of Plaintiff's symptoms limited Plaintiff's ability to do work activities.  (Tr. at 18).  With regards to the second consideration, when statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms were not substantiated by objective medical evidence, the ALJ had to make a finding based upon the credibility of the statements in the context of the entire record.  (Tr. at 18-19).

In this regard, the ALJ found that while Plaintiff's impairment could reasonably be expected to cause his pain and other symptoms, his statements concerning their intensity, persistence, and limiting effects were not credible to the extent that they were inconsistent with a finding that he could perform a light range of work.[4]  The ALJ considered the limitations to which Plaintiff testified, but found that 1) the record indicated that he had recovered from his kidney cancer without incident, and 2) there was no evidence of any exacerbation or problems with his arterial vascular malformation since his alleged onset date, and prior to that time he had maintained employment.  (Tr. at 19).

In making this determination, the ALJ considered the opinions of Dr. Faber and Dr. Levisay that Plaintiff was not capable of maintaining gainful employment.

_____

[4] Light work is defined as ". . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weight up to 10 pounds . . . a job in this category . . . requires a good deal of walking or standing, or . . . it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

(Tr. at 19). With respect to Dr. Faber's opinion, the ALJ noted that Dr. Faber had only stated that Plaintiff could not *obtain* gainful employment, and that he stated the Plaintiff would be unable to work an eight hour day in a factory setting. The ALJ found his opinion non-credible because he 1) did not provide a function-by-function assessment, 2) did not say that Plaintiff would be unable to perform any type of work, 3) did not provide treatment records showing any recent problems with ulcerations, which he had noted as a potential risk due to employment, and 4) his description of Plaintiff's August 2006 visit was unremarkable. (Tr. at 19). With regards to Dr. Levisay's opinion, the ALJ noted that Dr. Levisay was not treating Plaintiff for his arterial vascular malformation, which was the basis upon which Dr. Levisay stated Plaintiff could not perform manual labor. (Tr. at 19).

Instead, the ALJ found the opinion of the state agency that Plaintiff could perform medium work to be more convincing, as it was consistent with evidence in the record that Plaintiff's overall medical condition is stable. (Tr. at 20). However, "giving the [Plaintiff] some benefit of the doubt," the ALJ found him limited to light work. (Tr. 20). Consistent with this RFC of light work, the ALJ found that, based upon the VE's testimony, Plaintiff could perform his previous jobs as a telephone solicitor and small parts assembler, and that even if he further limited his RFC to sedentary work, Plaintiff would be able to perform his past job of telephone solicitor. (Tr. at 20). Therefore, the ALJ concluded that Plaintiff was not entitled to disability benefits because he was capable of performing his past relevant work. (Tr. at 20).

To be entitled to disability benefits under the Social Security Act, a claimant must prove that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To determine if the claimant is unable to engage in any substantial gainful activity, the Commissioner of Social Security engages in a factual determination. *See McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *see also Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999).

In the first step, a threshold determination is made to decide whether the claimant is presently involved in a substantially gainful activity. 20 C.F.R. §§ 404.1520(a)(i), 416.920(a)(i). If the claimant is not under such employment, the Commissioner of Social Security proceeds to the next step. At the second step, the Commissioner evaluates the severity and duration of the impairment. 20 C.F.R. §§ 404.1520(a)(iii), 416.920(a)(iii). If the claimant has an impairment that significantly limits his physical or mental ability to do basic work activities, the Commissioner will proceed to the next step. At the third step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to preclude any gainful work; and, if the elements on the list are met or equaled, he declares the claimant eligible for benefits. 20 C.F.R. §§ 404.1520(a)(iv), 416.920(a)(iv).

If the claimant does not qualify under one of the listed impairments, the Commissioner proceeds to the fourth and fifth steps. At the fourth step, the

claimant's RFC is evaluated to determine whether the claimant can pursue his past work. 20 C.F.R. §§ 404.1520(a)(iv), 416.920(a)(iv). If he cannot, then, at step five, the Commissioner evaluates the claimant's ability to perform other work available in the economy. 20 C.F.R. §§ 404.1520(a)(v), 416.920(a)(v). The claimant has the burden to prove disability through step four of the analysis, *i.e.*, he must demonstrate an impairment that is of sufficient severity to preclude him from pursuing his past work. *McNeil*, 614 F.2d at 145. However, once the claimant shows an inability to perform his past work, the burden shifts to the Commissioner, at step five, to show the claimant is able to engage in some other type of substantial gainful employment. *Id.*

Once a case reaches a federal district court, the court's review is governed by 42 U.S.C. § 405(g), which provides, in relevant part, "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Maggard*, 167 F.3d at 379 (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In a substantial evidence determination, the Court will review the entire administrative record, but it will "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). The Court must ensure that the Commissioner "build[s] an accurate and logical bridge from the evidence to his conclusion," even though he need not have addressed every piece of evidence. *Id.* at 872.

As previously noted, Plaintiff, proceeding *pro se*, only appears to raise three arguments as to why the ALJ's decision was erroneous. These arguments are that the ALJ erred in 1) limiting his discussion to only the evidence supporting his ultimate conclusion and not considering evidence from the Idaho Department of Rehabilitation; 2) viewing the Vocational Expert's opinion prior to the March 18, 2009 hearing; 3) editing the audio hearing to comport with his decision. The Court will consider each of these arguments in turn.

## 1. Discussion Limited to Evidence Supporting Conclusion/Failure to Consider Evidence from Idaho Department of Rehabilitation

In his Motion for Summary Judgment, Plaintiff cites to *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994), for the proposition that "although the Administrative Law Judge need not address every piece of evidence, he cannot limit his discussion to only that evidence that supports his ultimate conclusion." (Doc. 22-1 at 3). However, Plaintiff does not point to any evidence which the ALJ failed to consider other than records from the Idaho Department of Rehabilitation.[5] With respect to that evidence, the Court notes that Plaintiff did not submit it to the ALJ until after he had rendered his decision. (Tr. at 402). Clearly, the ALJ could not consider evidence which was not before him at the time of his decision, and a consideration of this evidence is only appropriate if Plaintiff seeks remand pursuant to sentence six of 42 U.S.C. § 405(g), which he has not done. Accordingly, the ALJ did not err in

---

[5] The Court notes that the ALJ considered, and rejected, evidence of Plaintiff's kidney cancer, depression, as well as the opinions of Dr. Faber and Dr. Levisay in support of Plaintiff's application for benefits. The ALJ further gave a reasoned analysis for why he rejected this evidence. *Ray v. Bowen*, 843 F.2d 998, 1008 (7th Cir. 1988).

not considering evidence which was not before him, and Plaintiff's initial argument fails.

## 2. Viewing of VE Opinion Prior to Hearing

Plaintiff also argues that the ALJ erred by having the VE's final opinion commented on prior to the Plaintiff's representative's questioning of him, and by accepting the VE's report prior to the hearing. (Doc. 22-1 at 3-4). The Court finds both of these arguments to be without merit. The fact that the VE faxed a copy of his report to the Agency's hearing office to be made part of the record prior to the hearing does not indicate that the ALJ did not make an independent consideration of the evidence. The ALJ specifically asked the VE at the hearing whether he had discussed the merits of the case with him prior to the hearing, to which the VE responded that he had not. (Tr. at 62). Further, the ALJ gave the VE the opportunity, following Plaintiff's testimony at the hearing, to amend his report, which indicates that the ALJ had not made his decision regarding the VE report prior to hearing all of the evidence. (Tr. at 63).

Nor does the fact that the ALJ did not ask the VE if he would like to amend his report a second time, following the Plaintiff's attorney's questioning of him, indicate that the ALJ "limited his discussion in support of his ultimate conclusion." (Doc. 22-1 at 3). The Plaintiff's attorney did not submit any new evidence to the VE in his questioning, but merely asked him a hypothetical in an effort to persuade the ALJ that Plaintiff was not capable of any employment. Accordingly, there was no need to ask the VE if he wished to amend his report, because no new evidence had been presented to him. Therefore, the Court does not find that the ALJ erred by

failing to ask the VE whether he would like to amend his report a second time, or by accepting his report into the record prior to the hearing.

### 3. Editing of Audio Hearing to Comport with Decision

Finally, Plaintiff claims that the ALJ erred because he "edited many things out of the audio hearing . . . to cover up for his incorrect review of this case." (Doc. 22-1 at 5). Plaintiff claims that there are many "unusually long gaps in time" during the audio CD, and that these gaps, in which there is no background noise, indicate that the CD was edited to comport with the ALJ's findings. (Doc. 22-1 at 5). Plaintiff also points to page 36 of the hearing transcript at lines 5, 6, 7, and 8, where there is a dash ("—") to argue that his testimony was deleted. (Doc. 22-1 at 5).

The Court also finds this argument to be without merit. The Court has reviewed both the audio CD and the transcript and does not believe there to be any evidence of tampering. While there are pauses on the audio CD, these are consistent with pauses in questioning, at which point either the ALJ, the Plaintiff, or the Plaintiff's attorney may have been gathering their thoughts or writing notes. Further, dashes on transcripts are not out of the ordinary, and merely indicate where one speaker interrupts the other. This is not evidence of a deletion, nor is it evidence that the ALJ was attempting to limit evidence to that which would be favorable to his decision. Accordingly, the Court does not find that there was any foul play such that the ALJ's decision should be reversed.

Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 22) is DENIED, Defendant's Motion for Summary Affirmance (Doc. 25) is GRANTED and Plaintiff's Motion for Affirmance of Movant's Reply (Doc. 28) is GRANTED to the extent that the Court has considered the arguments contained therein. The Clerk is directed to ENTER JUDGMENT in favor of Defendant and against Plaintiff. IT IS SO ORDERED.


CASE TERMINATED.


Entered this <u>15th</u> day of August, 2011.

_____
s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
